1
2
3
4
5
6
7
8

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

9  UNITED STATES OF AMERICA

10          Plaintiff,

11          v.                                  No. Civ. 05-149 DFL KJM

12
   APPROXIMATELY $1,200,000 IN           MEMORANDUM OF OPINION AND
13 U.S. CURRENCY SEIZED FROM FIRST                ORDER
   CALIFORNIA BANK ACCT. NO.
14 2005638, et. al,

15          Defendants.

16

17

18      This is a civil forfeiture action in which the government

19 has seized funds held in three separate accounts in the amount of

20 $1.2 million, $225,958.84, and $177,695.11 respectively.  The

21 government seizure rests on a claim that the funds are the

22 proceeds of fraud.  Claimant John Hollis ("Hollis") moves to stay

23 the proceeding under 18 U.S.C. 981(g)(2) because he is presently

24 the subject of a related criminal investigation.  The government

25 opposes this motion and has filed a cross-motion to dismiss

26 Hollis' claim.  It argues that Hollis does not have Article III

standing to claim an interest in the defendant funds and that

1

Hollis lacks statutory standing to seek a motion to stay because he has not filed an answer.  The government also asserts that, even if Hollis has standing, the court should issue, at most, a protective order rather than a stay.  For the reasons stated below, the court: (1) GRANTS the government's motion to dismiss Hollis' claim as to the seizure of the $1.2 million and the $177,695.11; (2) DENIES the government's motion to dismiss regarding the $225,958.84; and (3) enters a protective order that limits discovery in the forfeiture proceeding to the issue of Hollis' Article III standing until the criminal investigation and prosecution of Hollis has concluded.

I.

On August 10, 2004, the government filed a criminal complaint against Robert Lewis Brown, a.k.a. Matthew Schachter ("Brown").  (Mot. to Stay at 3.)  The complaint alleges that Brown and others sold worthless insurance policies, through Tri-Continental Exchange, Ltd. ("TCE") and Combined Services Ltd. ("CSL").  (Gov't Opp'n at 7.)  The government also alleges that Hollis represented that he was Brown's counsel and that Hollis transferred funds on Brown's behalf.  (Mot. to Stay at 3.)

Between June 2001 and August 2002, Brown wired approximately $5 million from the TCE bank account to an account at the Royal Bank of Canada.  (Gov't Opp'n at 8.)  During the summer of 2003, the bank told Brown that it was closing his account.  (<u>Id.</u>)  Before the account closed, Brown transferred approximately $2.3 million to a First California Bank account held by Hollis.  (<u>Id.</u>)

Six weeks later Hollis transferred $1.8 million of those funds to an account at Jyske Bank in Gibraltar. (Id.)  In mid-September 2004, about two weeks after Brown's arrest, Jyske Bank transferred $1.2 million back to Hollis' First California Bank account. (Id. at 9.)

The government further claims that Hollis assisted Brown in moving another $602,076.07. (Cross Mot. at 9.)  Hollis allegedly told law enforcement agents in July 2004 that TCE maintained a reserve fund of approximately $600,000 to pay potential insurance claims. (Id.)  These funds were held by Scotiabank in the Bahamas. (Id.)  On September 15, 2004, Scotiabank wired these funds to Hollis' First California Bank account. (Id. at 10.)

On September 17, 2004, a representative from First California Bank told Hollis that the government had seized the $1.2 million that was wired from Jyske Bank but had not yet seized the $602,076.07 that had just arrived from Scotiabank. (Id.)  Hollis responded, "I'll be moving them then." (Id.)  Hollis wrote a $284,000 check to himself and deposited it into his personal Bank of America account. (Id.)  The government seized $225,958.84 of these funds on September 29, 2004. (Hollis Mot. at 4.)  Hollis also wired $300,000 to the Bullivant Houser and Bailey law firm ("Bullivant funds"). (Gov't Mot. at 10.)  Bullivant voluntarily turned over $177,695.11 to the government. (Id. at 11.)  In sum, the government seized $1.2 million from Hollis' First California Bank account, $225,958.84 from Hollis' Bank of America account, and $177,695.11 from the Bullivant law

firm.   These funds are the defendants in this action.

On January 24, 2005, the government filed a Verified Complaint for Forfeiture in Rem.  The complaint alleges that the funds described above "were each involved in, or traceable to, money laundering violations and/or constitute or are derived from the proceeds of mail fraud, or a conspiracy to commit such offenses."  (Hollis Mot. at 4.)

Before any claimant appeared, the action was stayed by stipulation pending the conclusion of the criminal case against Brown, or the expiration of six months, whichever should occur first.   In the stipulation and order staying the case, Brown asserted that he was the owner of all the funds at issue in this case.  (5/11/2005 Stipulation & Order ¶ 2.)   In addition, Hollis asserted an interest in the funds seized from his trust and personal accounts, including the $1.2 million seized from his First California Bank account and the $225,958.84 seized from his Bank of America account.  (Id. ¶ 1.)   Hollis also stipulated that approximately $54,497.79 of these funds represented payment for legal fees, costs, and expenses earned by Hollis and other legal counsel for Brown prior to the seizure.  (Id.)   Hollis did not claim an interest in the Bullivant funds.  (Id.)   Indeed, on September 23, 2005, the parties stipulated that Bullivant held the funds in trust for Brown.  (9/23/2005 Stipulation & Order ¶ 1-2.)

During the period of the stay, Brown died in custody and the government dismissed the criminal charges against him.  (Id. at

12.)  On December 19, 2005, after Brown died, Hollis filed a
statement of interest in the defendant funds seized from his
personal and trust accounts ($1.2 million and $225,958.84).
(12/19/2005 Statement of Interest at 1.)  He also stated a claim
to the Bullivant funds as "trustee."  (Id. at 1-2.)

On January 4, 2006, Hollis filed a motion to stay and an
amended statement of interest.  In the amended interest
statement, Hollis asserts that he has: (1) an ownership and
possessory interest in the $225,958.84 seized from his Bank of
America account; (2) an ownership interest in the $177,695.11
Bullivant funds; and (3) a possessory interest in the $1.2
million seized from his First California Bank account because
those funds were "placed into his account in his (Hollis')
capacity as an agent and trustee for 'Robert Brown'."  (First Am.
Statement of Interest at 1-2.)

On March 7, 2006, without leave of court, Hollis filed a
second amended statement of interest with his opposition to the
government's cross-motion to dismiss.  In the second amended
interest statement, Hollis asserts that his First California Bank
account is an attorney-client trust account.  (Second Am.
Statement of Interest ¶ 1.)  He claims that he maintained the
$1.2 million in that account on behalf of Brown, and that he "is
duly authorized and responsible to seek return of said funds."
(Id.)  Hollis also claims an ownership interest in the
$225,958.84 seized from his personal Bank of America account
because the funds represent "legal fees that he earned as

income." (Id. ¶ 2.)  Finally, Hollis claims an ownership

interest in the $177,695.11 seized from Bullivant.  (Id. ¶ 3.)

He asserts that he advanced the funds to Bullivant as attorney

fees.  (Id.)  When Bullivant terminated its representation,

Hollis claims Bullivant had a duty to return the balance of the

funds to Hollis.  (Id.)

II.

Hollis moves to stay this civil forfeiture proceeding under

18 U.S.C. § 981(g)(2):

> Upon the motion of a claimant, the court shall stay the
> civil forfeiture proceeding with respect to that
> claimant if the court determines that - (A) the
> claimant is the subject of a related criminal
> investigation or case; (B) the claimant has standing to
> assert a claim in the civil forfeiture proceeding; and
> (C) continuation of the forfeiture proceeding will
> burden the right of the claimant against self-
> incrimination in the related investigation or case.

The government stipulates that Hollis "is the subject of a

related criminal investigation or case."  (Cross Mot. at 4.)

However, the government argues that Hollis does not have either

statutory or Article III standing to assert a claim.  (Id. at 4,

25-28.)  In assessing whether Hollis has standing, the government

urges the court to ignore Hollis' second amended statement of

interest because he filed it without leave to amend, in violation

of Fed. R. Civ. P. 15(a).  (Reply at 2-3.)  Finally, the

government argues that, even if Hollis did have standing, he has

not shown why a protective order rather than a stay would be

insufficient.  (Id.)

1  A.   <u>Hollis' Second Amended Statement of Interest</u>

2       A statement of interest is a responsive pleading.  Fed. R.

3  Civ. P. Supplemental Rule C(6).  Fed. R. Civ. P. 9(h) states that

4  amendment of such a pleading is governed by Fed. R. Civ. P. 15.

5  Under Rule 15(a), a claimant may amend his statement of interest

6  at "any time within 20 days after it is served."  Fed. R. Civ. P.

7  15(a).  Otherwise, he may only amend "by leave of court or by

8  written consent of the adverse party."  <u>Id.</u>

9       Hollis filed his first statement of interest on December 19,

10 2005.  (<u>See</u> Docket # 33.)  He filed his first amended statement

11 within 20 days on January 4, 2006.  (<u>See</u> Docket # 37.)  However,

12 he did not file his second amended statement until March 7, 2006,

13 well beyond the 20 day limit.  (<u>See</u> Docket # 52.)  Therefore, the

14 second amended statement of interest is a nullity that should not

15 be considered by the court.  <u>See</u> <u>Colbert v. City of Philadelphia</u>,

16 931 F.Supp. 389, 393 (E.D.Pa. 1996) (citing Fed. R. Civ. P.

17 15(a)) (federal district court did not consider untimely second

18 amended complaint because plaintiffs did not request leave to

19 amend).

20      Even if Hollis had requested leave to amend, Hollis has not

21 shown why he would be entitled to such an amendment.  When ruling

22 on a motion for leave to amend, courts consider factors such as

23 undue delay, bad faith or dilatory motive, futility of amendment,

24 and undue prejudice to the opposing party.  <u>Poling v. Morgan</u>, 829

25 F.2d 882, 886 (9th Cir. 1987).  Here, Hollis appears to be acting

26 in bad faith by attempting to amend because: (1) he contradicts

his previous statements; and (2) he could have made these factual allegations earlier.  For instance, he now asserts for the first time that the $225,958.84 seized from his personal Bank of America represents "legal fees that he earned as income." (<u>Id.</u> ¶ 2.)  He also asserts for the first time that the funds that he advanced to Bullivant were to be used as attorneys fees, and that, upon Brown's death, Bullivant had a duty to return those fees.  (Second Am. Statement of Interest ¶ 3.)  However, these assertions contradict Hollis previous stipulation on May 11, 2005 that only $54,497.79 of the defendant funds represented payment for legal fees, costs, and expenses.  (5/11/2005 Stipulation & Order ¶ 1.)  Moreover, Hollis gives no reason why he could not have claimed earlier that these funds represented legal fees and costs.  As such, it appears that Hollis has only amended his statement of interest in a bad faith attempt to re-shape his factual assertions to circumvent the arguments made by the government in its motion to dismiss.

For these reasons, the court disregards Hollis' second amended statement of interest.

B. <u>Statutory Standing</u>

Hollis concedes that to satisfy Section 981(g)(2)(B)'s standing requirements he must "establish standing both under Rule C(6) of the Supplemental Rules for Certain Admiralty and Maritime Claims ('Rule C(6)') and under Article III of the United States Constitution."  (Mot. to Stay at 5-6).  The government argues that Hollis has failed to establish standing under Rule C(6)

1  because he has not yet filed an answer.  (Cross Mot. at 25-28.)

2      To satisfy the statutory standing requirements, Hollis must

3  file both: (1) a verified statement within 30 days of receipt of

4  the government's complaint or completed publication, and (2) an

5  answer within 20 days after the filing of the statement."  Fed.

6  R. Civ. P. Supplemental Rule C(6).  The purpose behind Rule C(6)

7  is "to inform the court that there is a claimant to the property

8  who wants it back and intends to defend it."  United States v.

9  Real Property, 135 F.3d 1312, 1317 (9th Cir. 1998).

10      The district court has discretion to allow late filing of an

11  answer.  United States v. Real Property at 2659 Roundhill Dr.,

12  Alamo, Cal., 194 F.3d 1020, 1024 (9th Cir. 1999).  "Although a

13  formal extension request is surely envisioned, the district court

14  has 'discretion to overlook the failure to conform to the

15  requirements of Rule C(6).'"  Id. (citing United States v. 2930

16  Greenleaf Street, 920 F.Supp. 639, 644 (E.D.Pa. 1996)).  An

17  answer is not required for the court to grant a motion to stay.

18  See United States v. 14280 NW Tradewinds Street, No. Civ. 00-

19  1506-FR, 2001 WL 34050118 at *1-2 (D.Or. May 17, 2001) ("Barajas

20  1") (court granted motion to stay before answer was filed,

21  accepting claimant's argument that he could not file an answer

22  without burdening his right against self-incrimination in a

23  related criminal case); United States v. 29.77 Acres, No. Civ.

24  00-1505-FR, 2001 WL 34050119 at *1 (D.Or. May 22, 2001) ("Barajas

25

26

1  2") (same).[1]

2    The court has found only one reported decision where a

3  claimant was dismissed for failing to file a timely answer –

4  <u>United States v. $288,914 in U.S. Currency</u>, 722 F.Supp. 267 (E.D.

5  La. 1989).  In that case, the court chose to enforce Rule C(6)

6  because the claimants also failed to appear at their depositions

7  and demonstrated a lack of interest in pursuing their claim.   <u>Id.</u>

8    Given this case law, the court will allow Hollis to file a

9  late answer.  Hollis filed his original statement of interest on

10  December 19, 2005.  (Docket # 33.)  Two days later, on December

11  21, 2005, Hollis filed a stipulation and proposed order to extend

12  time to respond to the complaint.  (Docket # 34.)  The court

13  signed the proposed order on December 29, 2005, giving Hollis

14  until February 9, 2006 to file an answer.  (Docket # 36.)  Five

15  days after that, Hollis filed the motion to stay and his first

16  amended statement of interest.  (Docket ## 37, 38.)  Hearing for

17  ────────────────

18    [1] The government claims that these cases are too conclusory
to offer guidance because neither addresses the standing

19  requirements of Rule C(6), and neither discusses "the explicit
language of Section 981(g)(3), which evidences that Congress

20  intended the stay provisions in 981(g) to apply to discovery, not
pleading practice."  (Opp'n at 27-28.)  However, both cases

21  recognize that Rule C(6) applies.  <u>See</u> <u>Barajas 1</u> at *2; <u>Barajas 2</u>
at *1.  Moreover, section 981(g)(3) does not limit the stay

22  provisions to discovery.  The section merely clarifies what a
court can do "with respect to the impact of civil discovery."  18

23  U.S.C. § 981(g)(3) ("With respect to the impact of civil
discovery . . . the court may determine that a stay is

24  unnecessary if a protective order limiting discovery would
protect the interest of one party without unfairly limiting the

25  ability of the opposing party.") The section does not state that
stay provisions cannot also apply to pleading practice.  Finally,

26  the issue here is not whether a stay should enter but whether an
answer must be on file prior to seeking a stay of discovery or
opposing a motion to dismiss.

the motion was set for February 1, 2006, before the February 9
deadline for the answer.  (Id.)  However, because the government
filed a cross-motion to dismiss, the hearing date was reset for
March 29 to give the parties sufficient time to file the
necessary oppositions and replies.  (Docket # 47.)

It appears that Hollis only missed the February 9 deadline
to file an answer because of the continuance of the hearing on
the motion to stay.  There is no question that Hollis "is a
claimant to the property who wants it back and intends to defend
it."  See Real Property, 135 F.3d at 1317.  Moreover, Hollis has
stated that he "is prepared to file an [a]nswer if the [c]ourt
deems it necessary prior to granting the stay."  (Hollis Opp'n at
2 n.3.)  For these reasons, the court will permit Hollis to file
a late answer and finds that Hollis has statutory standing to
pursue a motion to stay prior to the filing of the answer.

C.   Article III Standing

"To demonstrate standing under Article III . . . a litigant
must allege a 'distinct and palpable injury to himself' that is
the direct result of the 'putatively illegal conduct of the
[adverse party]' and 'likely to be redressed by the requested
relief.'"  United States v. Cambio Exacta, S.A., 166 F.3d 522,
527 (2d Cir. 1999) (quoting Warth v. Seldin, 422 U.S. 490, 501,
95 S. Ct. 2197 (1975); Gladstone Realtors v. Village of Bellwood,
441 U.S. 91, 99, 99 S.Ct. 1601 (1979); and Simon v. Eastern Ky.
Welfare Rights Org., 426 U.S. 26, 44-45, 96 S. Ct. 1917 (1976)).
In a forfeiture action, a claimant may establish standing by

demonstrating an ownership or possessory interest.  <u>United States</u>
<u>v. $100,348.00 in U.S. Currency</u>, 354 F.3d 1110, 1118 (9th Cir.
2004).  Such interests usually establish standing because they
are "reliable indicators of injury that occurs when property is
seized."  <u>Cambio Exacta</u>, 166 F.3d at 527.  However, "the injury
to the party . . . remains the ultimate focus."  For this reason,
courts have "denied standing to 'straw' owners who do indeed
'own' the property, but hold title to it for somebody else.  Such
owners do not themselves suffer an injury when the property is
taken."  <u>Id.</u>; <u>accord</u> <u>United States v. One Parcel of Land</u>, 902
F.2d 1443, 1444 (9th Cir. 1990) (possession of legal title by one
who does not exercise dominion and control over the property is
insufficient to establish standing); <u>United States v. Vacant</u>
<u>Land</u>, 15 F.3d 128, 130-31 (9th Cir. 1993) (same).  In addition,
"where a mere custodian has possession, it is only a 'naked claim
of possession' and does not thereby impart Article III standing."
<u>Cambio Exacta</u>, 166 F.3d at 527.

          Standing "must be supported in the same way as any other
matter on which the plaintiff bears the burden of proof, i.e.,
with the manner and degree of evidence required at the successive
stages of the litigation."  <u>Lujan v. Defenders of Wildlife</u>, 504
U.S. 555, 561, 112 S.Ct. 2130 (1992).  Because the parties here
are at the pleading stage, Hollis only has the burden to prove
that the facts he has alleged, if true, would entitle him to some
form of legal remedy.  <u>See</u> <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46
(1957).  A claimant in a forfeiture proceeding is not required to

submit additional evidence of ownership along with his claim to establish standing.  David B. Smith, <u>Prosecution and Defense of Forfeiture Cases</u> ¶ 9.04[2][b] (2005); <u>see also</u> <u>United States v. $515,060.42 in U.S. Currency</u>, 152 F.3d 491, 498 (6th Cir. 1998).

Courts look to the state law in which the parties' interests arose to determine the legal sufficiency of those interests. <u>United States v. Real Property Located at 5208 Los Franciscos Way, Los Angeles, CA</u>, 385 F.3d 1187, 1191 (9th Cir. 2004).  The parties here agree that California law applies.

1.  <u>$1.2 million Seized from Client Trust Account</u>

In his first amended statement of interest, Hollis asserts that he has a possessory interest in the $1.2 million seized from his account at First California Bank because those funds were placed into the account in his capacity as an agent and trustee for Brown.  (First Am. Statement of Interest at 2.)  The government contends that the agency relationship between Hollis and Brown terminated upon Brown's death, and, therefore, Hollis' asserted possessory interest is untenable.  (Cross Mot. at 19.)

The government is correct that the relationship of client and attorney is one of principal and agent, <u>Monell v. College of Physicians and Surgeons of San Francisco</u>, 198 Cal.App.2d 38, 51 (1962), and that a client's death terminates the attorney's authority.  <u>Swartfager v. Wells</u>, 53 Cal.App.2d 522, 527-28 (1942).  However, "agency principles are not controlling when determining the existence and scope of an attorney's duties to a client."  <u>Streit v. Covington & Crowe</u>, 82 Cal.App.4th 441, 446

1   (2000).

2       In California, the attorney must maintain a proper account
3   balance in a client trust account.  Cal. Rule of Prof. Resp. 4-
4   100(A).  Indeed, failure to maintain a sufficient balance creates
5   a presumption of misappropriation.  Matter of Bleecker, 1 Cal.
6   State Bar Ct. Rptr. 113, 122-23 (Rev. Dept. 1990).  This duty
7   continues even upon a client's death.  See Cal. State Bar Form
8   Opn. 1975-36.  "Upon a client's death, the attorney must notify
9   the client's relatives or estate representative of possession of
10  client funds or property."  Paul W. Vapneck, et al., California
11  Practice Guide: Professional Responsibility § 9:222 (2005).  If
12  the estate does not claim the funds within three years, the
13  attorney must complete procedures to have the abandoned funds
14  escheat to the state under the Unclaimed Property Law.  Cal. Civ.
15  Proc. Code § 1518(a).  Therefore, even though an attorney's
16  authority to act on behalf of the client terminates upon a
17  client's death, the attorney must still maintain the client's
18  funds for the estate for up to three years.

19      However, the issue here is not maintenance of the funds for
20  benefit of the client's estate.  There is no evidence of an
21  estate or any instructions from Brown's heirs.  Rather, the issue
22  is whether the attorney for a deceased client has the authority
23  or duty to undertake litigation, without instruction from a
24  representative of the client, to protect a deceased client's
25  funds against civil forfeiture.  While California law does not
26  directly address this issue, the law regarding an attorney's duty

14

1  when dealing with third-party creditors provides guidance.

2       California Rule of Professional Conduct 4-100(B)(4) states

3  that when a client requests the funds in his client trust

4  account, the attorney must "[p]romptly pay or deliver . . . [the

5  funds] which the client is entitled to receive."  However, the

6  client may not be "entitled to receive" all funds in the account.

7  ABA Model Rule 1.15 recognizes that:

8          Third parties, such as the client's creditors, may have
           just claims against funds or other property in a
9          lawyer's custody.  A lawyer may have a duty under
           applicable law to protect such third-party claims
10         against wrongful interference by the client, and
           accordingly may refuse to surrender the property to the
11         client.  However, a lawyer should not unilaterally
           assume to arbitrate a dispute between the client and
12         the third party.

13 Cal. Ethics Op. 1988-101, 1988 WL 236373 (citing ABA Model Rule

14 1.15.)  The California State Bar Committee on Professional

15 Responsibility and Conduct notes that when a dispute arises

16 between a client and a third party, "[a]n attorney is ill-advised

17 to unilaterally prejudge the merits of such disputes and act in

18 favor of one individual or the other."  Id.  Therefore, "[t]he

19 safest course of action . . . is to commence a civil action in

20 interpleader by which the attorney divests him or herself of

21 responsibility for the funds and leaves the resolution of the

22 dispute to the court."  Id. (citing Cal. Civ. Proc. Code § 386 et

23 seq.)

24      Here, interpleader is both unnecessary and unavailable

25 because by the government's seizure the funds are already within

26 the control of the court.  See William W. Schwarzer, et. al,

1  <u>California Practice Guide: Federal Civil Procedure Before Trial</u> §

2  10:80 (2005) (citing <u>Gen. Atomic Co. v. Duke Power Co.</u>, 563 F.2d

3  53, 56 (10th Cir. 1977)).  Applying the analogy of third-party-

4  creditor law to the situation here, it appears that Hollis has no

5  further professional duty with respect to the funds.  The estate

6  of Brown, if it exists, may come forward to make a claim.  But

7  the funds do not belong to Hollis and he has no further duty to

8  litigate on behalf of a deceased client.  Therefore, Hollis does

9  not have standing to assert an interest in the $1.2 million that

10 was deposited in the client trust account.  Accordingly, the

11 court GRANTS the government's motion to dismiss regarding the

12 defendant $1.2 million.[2]

13     2. <u>$225,958.84 Seized from Hollis' Bank of America Account</u>

14     Hollis asserts in his first amended statement of interest

15 that he has an ownership interest in the defendant $225,958.84

16 because it was seized from his personal Bank of America account.

17 (First Am. Statement of Interest at 1.)  The government responds

18 by arguing that Hollis should have explained his interest more

19

20 ─────────────

21 [2] On June 23, 2006, Hollis notified the court about the recent holding in <u>Via Mat Int'l S. Am. Ltd. v. United States</u>, 446

22 F.3d 1258 (11th Cir. 2006), asserting that it is related to whether Hollis has standing to assert an interest in the $1.2

23 million.  In <u>Via Mat</u>, the government seized funds from an air carrier who was transporting the funds on behalf of a currency

24 exchange house.  The court held that the air carrier had standing to contest forfeiture because it was liable to the currency

25 exchange house for any monies that were not returned.  <u>Via Mat</u> does not apply here because, unlike the air carrier, Hollis no

26 longer has a duty to maintain the funds for Brown or his estate. Therefore, <u>Via Mat</u> does not change the court's conclusion regarding Hollis' standing.

thoroughly, particularly given the appearance of fraud.[3]   (Reply at 2.)   However, at this stage of the litigation Hollis is not required to submit additional evidence of ownership along with his claim to establish standing.[4]   David B. Smith, <u>Prosecution and Defense of Forfeiture Cases</u> ¶ 9.04[2][b] (2005).   He can survive a motion to dismiss so long as he makes general factual allegations of injury.   <u>Lujan</u>, 504 U.S. at 561.   The government's argument that Hollis was a "straw man" is better suited to a motion for summary judgment, where Hollis would have a greater burden to produce evidence in support of his claim.   Therefore, the court DENIES the government's motion to dismiss regarding the defendant $225,958.84.

   3. <u>$177,695.11 seized from Bullivant</u>

   Hollis asserts in his first amended statement of interest that he has an ownership interest in the Bullivant funds. (First

---

[3] The government contends that Hollis only held title for Brown as a "straw man" because:  (1) Hollis told agents that the funds consisted of TCE reserves; (2) the funds were transferred to the trust account within weeks of Brown's arrest; and (3) Hollis only transferred the funds to his personal account once he learned that the government had seized the $1.2 million from the trust account.  (Cross Mot. at 24.)

[4] The cases cited by the government to the contrary are inapposite because standing was addressed in those cases at later stages of litigation.  <u>See</u> <u>United States v. Real Property Located at 5208 Los Franciscos Way, Los Angeles</u>, 385 F.3d 1187 (9th Cir. 2004) (standing addressed in summary judgment motion); <u>United States v. One Parcel of Land</u>, 902 F.2d 1443, 1444 (9th Cir.1990) (court denied claim on standing grounds after full adjudication); <u>United States v. $515,060.42 in U.S. Currency</u>, 152 F.3d 491, 498 & n.6 (6th Cir. 1998) (standing addressed in Rule 59 motion after court dismissed case on eve of trial on statute of limitations grounds).

Am. Statement of Interest at 1.)  The government argues that
Hollis is judicially estopped from asserting an interest in these
funds because he did not claim an interest at all in the May 2005
stipulation and only asserted an interest as a trustee for an
unnamed beneficiary in December 2005.  (Cross Mot. at 20-21.)
Not until his first amended statement of interest filed in
January 2006 did Hollis assert an ownership interest in the
funds.  (Id.)  The government also contends that Hollis has
failed to assert a sufficient interest in the funds.

     Without reaching judicial estoppel, the court finds that
Hollis has failed adequately to allege standing as to the
Bullivant funds.

     Hollis claims that the defendant $177,695.11 funds were
originally in his attorney-client trust account, but he
transferred them to Bullivant to be used as attorneys fees.
(Hollis Opp'n at 8.)  He further asserts that when Bullivant
terminated its representation of Brown, it was obliged to return
the funds to Hollis.  (Id.)  From this, Hollis concludes that he
has an ownership interest in the funds.

     Hollis' conclusion is incorrect.  It is undisputed that the
funds that Hollis advanced to Bullivant were owned by Brown
because they were transferred from Brown's Scotiabank account
into Hollis' attorney-client trust account at First California
Bank.  "Costs advanced by a nonclient third party on the client's
behalf [such as the funds here] must . . . be held in a client
trust account because such funds are received for the client's

benefit."  Paul W. Vapneck, et al., <u>California Practice Guide:</u>
<u>Professional Responsibility</u> § 9:106 (2005).  Upon termination of
employment, "the attorney must promptly refund to the client any
part of a fee paid in advance that has not be earned."  <u>Id.</u> §
10:362.  Therefore, upon Bullivant's termination of
representation, Bullivant was obliged to return the funds to
Brown, not to Hollis.  Because Brown died, Brown's estate was the
rightful owner, not Hollis.  As discussed earlier, "upon a
client's death, the attorney must notify the client's relatives
or estate representative of possession of client funds or
property."  Vapneck, <u>supra</u>, § 9:222.  And, as also discussed
above, if there is a claim upon the funds by a third party the
attorney may have a duty to see that the claim is resolved by a
court.  But in no event would Bullivant have been justified in
giving the funds to Hollis or to any other third party.
Therefore, the court GRANTS the government's motion to dismiss
regarding the Bullivant funds.

### III.

Because the court denies the government's motion to dismiss
as to the $225,958.84, Hollis' motion to stay is still relevant.
Hollis asserts that continuing the forfeiture proceeding will
burden his right against self-incrimination in the related
criminal investigation.  (Mot. to Stay at 7.)  The government
asserts that the court should enter a protective order in lieu of
a stay because: (1) a protective order would adequately protect
Hollis' right against self-incrimination; and (2) a stay would

burden the rights of "hundreds, if not thousands, of people [who] potentially have a stake" in this case.  (Cross Mot. at 29-30.) The protective order envisioned by the government would allow the government to proceed with discovery and further pretrial motions "directed solely to whether Hollis has Article III standing to maintain a claim."  (Cross Mot. at 31.)  The court agrees with the position of the government.

Under 18 U.S.C. § 981(g)(3), a court "may determine that a stay is unnecessary if a protective order limiting discovery would protect the interest of one party without unfairly limiting the ability of the opposing party to pursue the civil case." Hollis has not demonstrated how his Fifth Amendment rights would be violated if he merely had to respond to discovery regarding his Article III standing with respect to the $225,958.84. Therefore, the court issues a protective order limiting discovery to the issue of Hollis' Article III standing.  This protective order is subject to revision for good cause shown.

                                III.

For the reasons stated above, the court: (1) GRANTS the government's motion to dismiss Hollis' claim for the $1.2 million and the $177,695.11; (2) DENIES the government's motion to dismiss regarding the $225,958.84; and (3) enters a protective order that limits discovery in the forfeiture proceeding to the issue of Hollis' Article III standing as to the $225,958.84 until the criminal investigation and prosecution of Hollis has concluded.

1    Hollis must file an answer as to the $225,958.84 within 21

2 days of the date of this order.

3    IT IS SO ORDERED.

4 Dated: July 18, 2006

5                                  /s/ David F. Levi
                                   _____
6                                  DAVID F. LEVI
                                   United States District Judge
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26